# United States Bankruptcy Court
### Eastern District of New York

| | | | |
|---|---|---|---|
| In re | **The Family T LLC** | Case No. | **1-10-47076** |
| | Debtor(s) | Chapter | **11** |

Small Business Case under Chapter 11

## THE FAMILY T LLC'S  AMENDED DISCLOSURE STATEMENT, DATED NOVEMBER 12, 2010

## I.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the small business chapter 11 case of **The Family T LLC** (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Debtor's amended plan of reorganization (the "Plan") filed by **The Family T LLC** on November 12, 2010.   A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages 5-7 of this Disclosure Statement.  General unsecured creditors are classified in Class 4, and will receive a distribution of 100% of their allowed claims plus interest at the Legal Rate, to be distributed in monthly payments over three years.

### A.    Purpose of This Document

This Disclosure Statement describes:

The Debtor and significant events during the bankruptcy case,
How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
Who can vote on or object to the Plan,
What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
Why the the Debtor believes the  Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

#### 1.    *Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will take place on _____, at _____, in Courtroom ___, at the United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York  11201.

#### 2.    *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Backenroth Frankel & Krinsky, LLP, 489 5th Avenue, New York, New York  10017.  See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ or it will not be counted.

       3.     *Deadline For Objecting to Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon Backenroth Frankel & Krinsky, LLP, 489 5th Avenue, New York, New York 10017 by _____. _____.

       4.     *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Backenroth Frankel & Krinsky, LLP, 489 5th Avenue, New York, New York 10017, attn. Mark Frankel (212) 593-1100; mfrankel@bfklaw.com.

    **C.**     **Disclaimer**

*The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

## II.    BACKGROUND

    **A.**     **Description and History of the Debtor's Business**

The Debtor is a limited liability company. Since 2008, the Debtor has been in the business of owning that certain real property known as 3223 Quentin Road, Brooklyn, New York (the "Property")

    **B.**     **Insiders of the Debtor**

The Debtor's insiders are Mer Bresler, the Debtor's 90% membership owner, and Alan Bresler, his son, the managing member and 10% membership owner of the Debtor. Neither of these persons has been paid compensation nor will they be paid compensation during this case. Initially in 2008, the Debtor was 100% owned by Alan Bresler. Mer Bresler, his father, provided the equity funding for the Property. In addition, Mer Bresler financed the construction of a restaurant that, through a separate entity, Alan Bresler opened at the Property. Mer Bresler also provided equity funding for other unrelated restaurant ventures Alan Bresler initiated. By 2009, however, Alan Bresler's restaurant ventures were failing, and such failure deepened in late 2009 when Alan Bresler was unable to work for many months following a serious injury. In early 2010, Alan Bresler turned over 90% ownership of the Debtor to his father as partial repayment of his obligations.

    **C.**     **Management of the Debtor Before and During the Bankruptcy**

During the two years prior to the date on which the bankruptcy petition was filed, and during the Debtor's Chapter 11 case, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were Mer Bresler and Alan Bresler. Post-confirmation management will remain unchanged.

As described herein, Alan Bresler will be responsible for the collection of rent and payment of the mortgage and will receive no compensation for such services.

    **D.**     **Events Leading to Chapter 11 Filing**

The Debtor's principal asset is a small commercial property located at 3223 Quentin Road Brooklyn, New York (the "Property"). The Debtor believes that the value of the Property is $950,000.

The Property is encumbered by a note and mortgage held by Valley National Bank upon which the Debtor estimates approximately $700,000 is due, as well as New York City tax water and sewer charges in the amount of approximately $17,000. The Debtor has approximately $40,000 of general unsecured debts.

The Debtor fell into arrears on the mortgage because the restaurant that Alan Bresler was operating from

the Property was failing and could not cover both its expenses and the mortgage obligation. Accordingly, the lender commenced a foreclosure action in the Kings County Supreme Court.

In order to increase revenue to help bring the mortgage current, Alan Bresler closed the restaurant that he was operating under a different entity, and entered into a new lease with Champion of Steaks, LLC, a new tenant owned by new investors. Alan Bresler now works for Champion of Steaks as a chef, but neither he nor Mer Bresler has an ownership interest in Champion of Steaks. The new lease has substantially better terms than the terminated lease, and will generate sufficient rental income to satisfy the Debtor's obligations under the note and mortgage.

In addition, the Debtor has arranged for a third party loan sufficient to reinstate its mortgage under section 1124 of the Bankruptcy Code as part of a plan of reorganization.

In the meantime, the Debtor intends to pay the mortgage currently during this case. The Champion of Steaks lease is essentially 'triple net' so the Debtor does not anticipate any other significant operating expenses.

**E.      Significant Events During the Bankruptcy Case**

Since filing this case, the Debtor has applied to the Bankruptcy Court to retain Backenroth Frankel & Krinsky, LLP as bankruptcy counsel. In addition, the Debtor has applied for an order fixing a last day for creditors to file claims in this case. That bar date is December 15, 2010. During the pendency of this case, the Debtor intends to pay the mortgage currently. The Champion of Steaks lease is essentially 'triple net' so the Debtor does not anticipate any other significant operating expenses.

**F.      Projected Recovery of Avoidable Transfers**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions at this time, because the Debtor is unaware of any such claims, and because the plan provides payment in full of all of its obligations.

**G.      Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

**H.      Current and Historical Financial Conditions**

Based upon the purchase price the Debtor paid for the Property, and the mortgage loan advanced by the lender in 2008, the Debtor believes that the Property has a $950,000 value. Given market declines since the mortgage loan was made, the Debtor's belief is admittedly speculative.

The Debtor's most recent financial statements issued before bankruptcy, each of which was filed with the Court, are set forth in Exhibit B.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit C.

## III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B.    Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has not placed the following claims in any class:

#### 1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | None | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | None | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, projected to be approved by the Court. | $20,000 | Paid in full by Mer Bresler from non-Debtor funds on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | None | Paid in full on the effective date of the Plan |
| Other administrative expenses | None | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | $325 | Paid in full on the effective date of the Plan |
| TOTAL | $20,325 | |

#### 2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description<br>(name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| **None** | | | |
| | | | |

**C.**    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Secured Claim of the City of New York for tax, water and sewer charges.<br><br>Collateral Description:  the Property<br><br>Allowed Secured Amount:  $17,128<br><br>Priority of lien:  First | **No** | unimpaired | Payment on the                = $17,128 Effective Date in full in cash plus interest at the statutory rate. |

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 2 | Secured Claim of Valley National Bank.<br><br>Collateral Description: the Property<br><br>Secured Amount: $710,000 original principal amount; $695,174 principal amount as of September, 2009 (est.).<br><br>Monthly Payment of 6% Contract Rate Interest plus amortization payment under Note: $4,574.54<br><br>Monthly Payments in Arrears as of November 2010: 14<br><br>Total Amount Due to Reinstate as of October 2010 at contract rate: $54,894, plus late fees of $5,032 plus attorneys fees of $6,323.<br><br>Balloon Payment at Maturity: $641,678 (est.)<br><br>Priority of lien: Second | No | unimpaired under 11 U.S.C. 1124 | Contract Rate Payments = **$4,574.54** Begin November 2010<br><br>Payments End September 1, 2013<br>Balloon payment = **$641,678 (est.)**<br><br>Interest rate % = **6**<br><br>Treatment of Lien = **Unimpaired**<br><br>December 2010 Effective Date Cure Payment = **$54,894**, plus late fees plus of $5,032 plus attorneys fees of $6,323. |

2.     *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 3 | Priority unsecured claim pursuant to Section 507(a)(1), (4), (5), (6), and (a)(7) of the Code<br><br>Total amt of claims =<br>$ **2,872 IRS estimated claim filed. Claim is disputed** | unimpaired | **Class 3 Claims, if any, shall be paid in full in cash with interest at the Legal Rate on the Effective Date, or pursuant to such other treatment as the Debtor and a particular Class 3 claimant may agree upon.** |
|  |  |  |  |

3.        *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The following chart identifies the Plan's proposed treatment of Class 4, which contains general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 4 | General Unsecured Claims<br><br>Total amt of claims = $34,400 | impaired | **Class 4 Claims, if any, shall be paid in full with interest at the Legal Rate in 36 monthly installments commencing on the Effective Date, or pursuant to such other treatment as the Debtor and a particular Class 4 claimant may agree upon.** |

4.        *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder. The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 5 | Equity interest holders | unimpaired | **Class 5 Equity interest holder's rights unchanged by Plan** |

**D.        Means of Implementing the Plan**

1.        *Source of Payments*

Payments and distributions under the Plan to Classes 1, 2, and 3 will be funded by the following: $70,000 unsecured loan made by Joseph Treff in favor of the Debtor, plus $4,961 of Debtor funds on hand for a total of $74,961. Such funds are on deposit in an IOLA account maintained by Backenroth Frankel & Krinsky, LLP. The Debtor has been informed that Mr. Treff will deposit an additional $11,279 to be used to make an additional loan in that amount to fund Effective Date payments. Payments to general unsecured creditors will be made from post-confirmation operating revenue as set forth on the annexed post-confirmation projections. Payment of administration claims in the nature of professional fees for Backenroth Frankel & Krinsky, LLP shall be paid from non-Debtor funds by Mer Bresler.

2.        *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|------|--------------|----------------------|----------|--------------|
| **Alan Bresler** | **Managing Member**<br>**10% owner** | **yes** | **Managing Member** | **None** |
|  |  |  |  |  |

**E.        Risk Factors**

The proposed Plan has the following risks: Payments to Class 4 general unsecured creditors and future payments to the Class 2 claimant is contingent upon the payment of rent by the Debtor's tenant, and/or the Debtor's ability to replace that tenant.

F.       **Executory Contracts and Unexpired Leases**

The Plan, in Article 6.1, indicates that the Debtor will be assuming its lease with its tenant Champion of Steaks, LLC. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6.1 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract Is Sixty Days after the Entry of the Order Confirming the Plan.** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G.       **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following are the anticipated tax consequences of the Plan: The tax consequences to the Debtor of the Plan appear to be nominal. The general tax consequences to creditors of any discharge may be such creditors right to deduct some or all of the loss incurred by such creditor. The general tax consequences of receipt of plan consideration after confirmation may constitute the receipt of taxable income to such creditor.

## IV.       CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A.       **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that class 4 is the only impaired class and that only class 4 claimants are entitled to vote to accept or reject the Plan.

1.     *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

> ***The deadline for filing objections to claims is sixty days after the Effective Date of the Plan****.*

2.     *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.     *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

> holders of claims and equity interests that have been disallowed by an order of the Court;

> holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

> holders of claims or equity interests in unimpaired classes;

> holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

> holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

> administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan .***

4.     *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B.     Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

1.     *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.      *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code.  A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan.  The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity  interest, as the variations on this general rule are numerous and complex.***

C.      **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  In this case, the Debtor assumes, (but due to the unsettled value of the property cannot be certain), that in a liquidation, all creditors would be paid in full in a liquidation.  Accordingly, the Plan provides for payment of all creditors in full with interest over time, which provides creditors with the same value that would be entitled to in a liquidation.  A liquidation analysis is attached to this Disclosure Statement as Exhibit D.

D.      **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.      *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibit E.

2.      *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information.  Those projections are listed in Exhibit F.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses plan distributions, and post-confirmation taxes, of $1,370. The final Plan payment is expected to be paid 36 months after the Effective Date.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

V.      **EFFECT OF CONFIRMATION OF PLAN**

A.      **DISCHARGE OF DEBTOR**

Discharge.  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B).  After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

B.        **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

C.        **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

**/s/ Alan Bresler**
**The Family T LLC**

**/s/ Mark Frankel**
**Backenroth Frankel & Krinsky, LLP**

# EXHIBITS

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com

Exhibit A

# United States Bankruptcy Court
### Eastern District of New York

| | | | |
|---|---|---|---|
| In re | **The Family T LLC** | Case No. | **1-10-47076** |
| | Debtor(s) | Chapter | **11** |

Small Business Case under Chapter 11

## THE FAMILY T LLC'S  AMENDED PLAN OF REORGANIZATION, DATED NOVEMBER 12, 2010

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of **The Family T LLC** (the "Debtor") from loan proceeds.

This Plan provides for 2 class of secured claims; 1 class of priority claims; 1 class of unsecured claims; and 1 class of equity security holders.  Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100 cents on the dollar.  This Plan also provides for the payment of administrative and priority claims in full on the effective date of this Plan.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1.  All claims of the City of New York to the extent allowed as secured claims under § 506 of the Code.

2.02    Class 2.  The claim of Valley National Bank, to the extent allowed as a secured claim under § 506 of the Code.

2.03    Class 3.  All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

2.03    Class 4.  All unsecured claims allowed under § 502 of the Code.

2.04    Class 5.  Equity interests of the Debtor.

### ARTICLE III
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
### U.S. TRUSTEE'S FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims.  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    Administrative Expense Claims.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    Priority Tax Claims.  Each holder of a priority tax claim will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.04   <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01   Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - City of New York | unimpaired | Paid in full on the Effective Date of this Plan (as defined in Article VIII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| Class 2 - Secured Claim of Valley National Bank | unimpaired. | Paid unpaid interest at the non-default contract rate, plus late fees plus reasonable attorneys fees to effectuate reinstatement of the Class 2 note and mortgage pursuant to 1124(2) of the Bankruptcy Code on the Effective Date of this Plan (as defined in Article VIII). |
| Class 3 - Priority Claims | unimpaired | Paid in full on the Effective Date of this Plan (as defined in Article VIII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| Class 4 - General Unsecured Creditors | impaired. | Paid in full in monthly installments commencing on the Effective Date for a period of 36 months bearing interest at the Legal Rate (as defined in Article VIII), or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| Class 5 - Equity Security Holders of the Debtor | unimpaired. | Equity Interests Holders continue to own their interests in the Debtor. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01   <u>Disputed Claim</u>. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02   <u>Delay of Distribution on a Disputed Claim</u>.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03   <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim without court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

# ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases effective upon the the date of the entry of the order confirming this Plan:

| Name of Other Parties to Lease or Contract | Description of Contract or Lease |
|---|---|
| **Champion of Steaks, LLC** | Debtor is landlord of lease expiring 2020 |

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the the date of the entry of the order confirming this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than sixty (60) days after the date of the order confirming this Plan.

# ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.  The Debtor intends to pay creditors with funds deposited by Joseph Treff, a third party lender, and the Debtor in an IOLA account maintained by Backenroth Frankel & Krinksy, LLP before the Confirmation Hearing.

7.02    At all relevant times herein, the Debtor has been managed by Alan Bresler.  Such management shall remain unchanged by the Plan.

# ARTICLE VIII
## GENERAL PROVISIONS

8.01    Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.02    Effective Date of Plan.  The effective date of this Plan is the eleventh business day following the date of the entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03    Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07    Legal Rate.  The applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

# ARTICLE IX
## DISCHARGE

9.01    <u>Discharge</u>.  On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

Respectfully submitted,

By:    **/s/ Alan Bresler, Managing Member**
　　　　**Alan Bresler**

By:    **/s/ Mark Frankel**
　　　　Backenroth Frankel & Krinsky, LLP
　　　　Attorneys for the Plan Proponent

Exhibit B

1:52 PM

08/02/10

Accrual Basis

# THE FAMILY T LLC
# DRAFT Balance Sheet
### As of December 31, 2009

|  | Dec 31, 09 |
|---|---|
| **ASSETS** | |
| Current Assets | |
| Other Current Assets | |
| Loan-To A Tee LLC | 23,734.78 |
| **Total Other Current Assets** | 23,734.78 |
| **Total Current Assets** | 23,734.78 |
| Fixed Assets | |
| Building | 710,000.00 |
| **Total Fixed Assets** | 710,000.00 |
| **TOTAL ASSETS** | 733,734.78 |
| **LIABILITIES & EQUITY** | |
| Liabilities | |
| Current Liabilities | |
| Other Current Liabilities | |
| Loan | 17,887.72 |
| Park Avenue Loan | 698,992.51 |
| **Total Other Current Liabilities** | 716,880.23 |
| **Total Current Liabilities** | 716,880.23 |
| **Total Liabilities** | 716,880.23 |
| Equity | |
| Retained Earnings | -2,619.70 |
| Net Income | 19,474.25 |
| **Total Equity** | 16,854.55 |
| **TOTAL LIABILITIES & EQUITY** | 733,734.78 |

# THE FAMILY T LLC
## draft Profit & Loss
### January through December 2009

|  | Jan - Dec 09 |
|---|---|
| **Income** | |
| Rental Income | 52,598.16 |
| **Total Income** | 52,598.16 |
| **Expense** | |
| Interest Expense | 33,123.91 |
| **Total Expense** | 33,123.91 |
| **Net Income** | 19,474.25 |

# THE FAMILY T LLC
## General Ledger
### As of December 31, 2009

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|---|---|---|---|---|---|---|---|
| **Park Avenue #8250** | | | | | | | |
| Deposit | 1/2/2009 | | TRANSFER FRO... | Deposit | Rental Income | 4,900.00 | 650.92 |
| Check | 1/5/2009 | | 401788 | | -SPLIT- | -4,574.54 | 5,550.92 |
| Deposit | 3/2/2009 | | TRANSFER FRO... | Deposit | Rental Income | 4,900.00 | 976.38 |
| Check | 3/3/2009 | | 401788 | | -SPLIT- | -4,574.54 | 5,876.38 |
| Check | 7/15/2009 | | TRANSFER TO L... | FOR TO A TEE ... | Loan-To A T... | -34.78 | 1,301.84 |
| Deposit | 8/6/2009 | | TRANSFER FRO... | Deposit | Rental Income | 4,900.00 | 1,267.06 |
| Deposit | 8/7/2009 | | TRANSFER FRO... | Deposit | Rental Income | 4,900.00 | 6,167.06 |
| Deposit | 8/10/2009 | | TRANSFER FRO... | Deposit | Rental Income | 4,900.00 | 11,067.06 |
| Deposit | 8/14/2009 | | TRANSFER FRO... | Deposit | Rental Income | 4,900.00 | 15,967.06 |
| Check | 8/14/2009 | | DEBIT MEMO | | Loan-To A T... | -14,700.00 | 20,887.06 |
| Deposit | 8/17/2009 | | TRANSFER FRO... | Deposit | Rental Income | 4,900.00 | 6,167.06 |
| Deposit | 8/20/2009 | | TRANSFER FRO... | Deposit | Rental Income | 4,900.00 | 11,067.06 |
| Check | 8/20/2009 | | DEBIT MEMO | | Loan-To A T... | -9,000.00 | 15,967.06 |
| Check | 8/24/2009 | | INTERNAL TRAN... | | Loan | -6,967.06 | 6,967.06 |
| | | | | | | | 0.00 |
| **Total Park Avenue #8250** | | | | | | -650.92 | 0.00 |
| **Loan-To A Tee LLC** | | | | | | | |
| Check | 7/15/2009 | | TRANSFER TO L... | FOR TO A TEE ... | Park Avenue ... | 34.78 | 0.00 |
| Check | 8/14/2009 | | DEBIT MEMO | | Park Avenue ... | 14,700.00 | 34.78 |
| Check | 8/20/2009 | | DEBIT MEMO | | Park Avenue ... | 9,000.00 | 14,734.78 |
| **Total Loan-To A Tee LLC** | | | | | | 23,734.78 | 23,734.78 |
| **Building** | | | | | | | 23,734.78 |
| **Total Building** | | | | | | | 710,000.00 |
| **Loan** | | | | | | | 710,000.00 |
| General Journal | 3/30/2009 | 033009 | | | | | -6,231.16 |
| General Journal | 6/30/2009 | 063009 | | | Interest Expe... | -4,574.54 | -10,805.70 |
| General Journal | 7/15/2009 | 071509 | | | Interest Expe... | -4,574.54 | -15,380.24 |
| Check | 8/24/2009 | | INTERNAL TRAN... | | Interest Expe... | -4,574.54 | -19,954.78 |
| General Journal | 8/31/2009 | 083109 | | | Park Avenue ... | 6,967.06 | -12,987.72 |
| | | | | | Interest Expe... | -4,900.00 | -17,887.72 |
| **Total Loan** | | | | | | -11,656.56 | -17,887.72 |
| **Park Avenue Loan** | | | | | | | |
| Check | 1/5/2009 | 401788 | | | | | -707,039.46 |
| Check | 3/3/2009 | 401788 | | | Park Avenue ... | 916.03 | -706,123.43 |
| General Journal | 3/30/2009 | 033009 | | | Park Avenue ... | 927.34 | -705,196.09 |
| General Journal | 6/30/2009 | 063009 | | | Interest Expe... | 1,279.30 | -703,916.79 |
| General Journal | 7/15/2009 | 071509 | | | Interest Expe... | 930.72 | -702,986.07 |
| General Journal | 8/31/2009 | 083109 | | | Interest Expe... | 1,055.38 | -701,930.69 |
| General Journal | 10/2/2009 | 100209 | | | Interest Expe... | 937.63 | -700,993.06 |
| General Journal | 11/3/2009 | 110309 | | | Interest Expe... | 1,054.96 | -699,938.10 |
| | | | | | Interest Expe... | 945.59 | -698,992.51 |
| **Total Park Avenue Loan** | | | | | | 8,046.95 | -698,992.51 |
| **Payroll Liabilities** | | | | | | | -698,992.51 |
| **Total Payroll Liabilities** | | | | | | | 0.00 |
| **Opening Bal Equity** | | | | | | | 0.00 |
| **Total Opening Bal Equity** | | | | | | | 0.00 |
| **Retained Earnings** | | | | | | | 2,619.70 |
| **Total Retained Earnings** | | | | | | | 2,619.70 |
| **Rental Income** | | | | | | | |
| Deposit | 1/2/2009 | | TRANSFER FRO... | Deposit | Park Avenue ... | -4,900.00 | 0.00 |
| Deposit | 3/2/2009 | | TRANSFER FRO... | Deposit | Park Avenue ... | -4,900.00 | -4,900.00 |
| Deposit | 8/6/2009 | | TRANSFER FRO... | Deposit | Park Avenue ... | -4,900.00 | -9,800.00 |
| Deposit | 8/7/2009 | | TRANSFER FRO... | Deposit | Park Avenue ... | -4,900.00 | -14,700.00 |
| Deposit | 8/10/2009 | | TRANSFER FRO... | Deposit | Park Avenue ... | -4,900.00 | -19,600.00 |
| Deposit | 8/14/2009 | | TRANSFER FRO... | Deposit | Park Avenue ... | -4,900.00 | -24,500.00 |
| Deposit | 8/17/2009 | | TRANSFER FRO... | Deposit | Park Avenue ... | -4,900.00 | -29,400.00 |
| Deposit | 8/20/2009 | | TRANSFER FRO... | Deposit | Park Avenue ... | -4,900.00 | -34,300.00 |
| General Journal | 10/2/2009 | 100209 | | | Interest Expe... | -4,249.08 | -39,200.00 |
| General Journal | 11/3/2009 | 110309 | | | Interest Expe... | -4,574.54 | -43,449.08 |
| General Journal | 11/23/2009 | 112309 | | | Interest Expe... | -4,574.54 | -48,023.62 |
| | | | | | | | -52,598.16 |
| **Total Rental Income** | | | | | | -52,598.16 | -52,598.16 |

# THE FAMILY T LLC
## General Ledger
### As of December 31, 2009

| Type | Date | Num | Name | Memo | Split | Amount | Balance |
|------|------|-----|------|------|-------|--------|---------|
| **Interest Expense** | | | | | | | |
| Check | 1/5/2009 | | | | | | 0.00 |
| Check | 3/3/2009 | 401788 | | | Park Avenue ... | 3,658.51 | 3,658.51 |
| General Journal | 3/30/2009 | 401788 | | | Park Avenue ... | 3,647.20 | 7,305.71 |
| General Journal | 6/30/2009 | 033009 | | | -SPLIT- | 3,295.24 | 10,600.95 |
| General Journal | 7/15/2009 | 063009 | | | -SPLIT- | 3,643.82 | 14,244.77 |
| General Journal | 8/31/2009 | 071509 | | | -SPLIT- | 3,519.16 | 17,763.93 |
| General Journal | 10/2/2009 | 083109 | | | -SPLIT- | 3,962.37 | 21,726.30 |
| General Journal | 11/3/2009 | 100209 | | | -SPLIT- | 3,194.12 | 24,920.42 |
| General Journal | 11/23/2009 | 110309 | | | -SPLIT- | 3,628.95 | 28,549.37 |
| | | 112309 | | | Rental Income | 4,574.54 | 33,123.91 |
| **Total Interest Expense** | | | | | | 33,123.91 | 33,123.91 |
| **Payroll Expenses** | | | | | | | |
| **Total Payroll Expenses** | | | | | | | 0.00 |
| **No accnt** | | | | | | | 0.00 |
| **Total no accnt** | | | | | | | 0.00 |
| | | | | | | | 0.00 |
| **TOTAL** | | | | | | 0.00 | 0.00 |

Exhibit C

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re Family T, LLC                                    Case No. 10-47076
_____                       Reporting Period: 8/01/10-8/31/10
        Debtor

                                                       Federal Tax I.D. # _____

## SINGLE ASSET REAL ESTATE COMPANIES

**File with the Court and submit a copy to the United States Trustee within 20 days after the end of the month and submit a copy of the report to any official committee appointed in the case.**
*(Reports for Rochester and Buffalo Divisions of Western District of New York are due 15 days after the end of the month, as are the reports for Southern District of New York.)*

| REQUIRED DOCUMENTS | Form No. | Document Attached | Explanation Attached |
|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 (RE) | | |
| Bank Reconciliation (or copies of debtor's bank reconciliations) | MOR-1 (CON'T) | | |
|    Copies of bank statements | | | |
|    Cash disbursements journals | | | |
| Statement of Operations | MOR-2 (RE) | | |
| Balance Sheet | MOR-3 (RE) | | |
| Summary of Unpaid Post-petition Debts | MOR-4 (RE) | | |
|    Copies of tax returns filed during reporting period | | | |
| Rent Roll | MOR-5 (RE) | | |
| Payments to Insiders and Professional | MOR-6 (RE) | | |
| Post Petition Status of Secured Notes, Leases Payable | MOR-6 (RE) | | |
| Cash Flow Projection | MOR-7 (RE) | | |
| Debtor Questionnaire | MOR-8 (RE) | | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the attached documents
are true and correct to the best of my knowledge and belief.

_____        Date _____
Signature of Debtor

_____        Date 9/22/10
Signature of Authorized Individual* s/ Alan Bresler

_____        Date _____
Printed Name of Authorized Individual

*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor is a
partnership; a manager or member if debtor is a limited liability company.

In re _____    Case No. _____
     **Debtor**    **Reporting Period:** _____

## SCHEDULE OF CASH RECEIPTS AND DISBURSEMENTS

Amounts reported should be from the debtor's books and not the bank statement.  The beginning cash should be the ending cash from the prior month or, if this is the first report, the amount should be the balance on the date the petition was filed.  The amounts reported in the "CURRENT MONTH - ACTUAL" column must equal the sum of the three bank account columns.  Attach copies of the bank statements and the cash disbursements journal.  The total disbursements listed in the disbursements journal must equal the total disbursements reported on this page.  A bank reconciliation must be attached for each account.  [See MOR-1 (CON'T)]

| | BANK ACCOUNTS | | | |
|---|---|---|---|---|
| **ACCOUNT NUMBER (LAST 4)** | OPER | TAX | OTHER | CURRENT MONTH ACTUAL (TOTAL OF ALL ACCOUNTS) |
| **CASH BEGINNING OF MONTH** | $        875.00 | | | $        875.00 |
| **RECEIPTS** | | | | |
| CASH SALES | | | | |
| ACCOUNTS RECEIVABLE - PREPETITION | | | | |
| ACCOUNTS RECEIVABLE - POSTPETITION | | | | |
| LOANS AND ADVANCES | | | | |
| SALE OF ASSETS | | | | |
| OTHER *(ATTACH LIST)* | $      6,000.00 | | | $      6,000.00 |
| TRANSFERS *(FROM DIP ACCTS)* | | | | |
| **TOTAL RECEIPTS** | | | | |
| **DISBURSEMENTS** | | | | |
| NET PAYROLL | | | | |
| PAYROLL TAXES | | | | |
| SALES, USE, & OTHER TAXES | | | | |
| INVENTORY PURCHASES | | | | |
| SECURED/ RENTAL/ LEASES | $      4,574.54 | | | $      4,574.54 |
| INSURANCE | | | | |
| ADMINISTRATIVE | | | | |
| SELLING | | | | |
| OTHER *(ATTACH LIST)* | | | | |
| OWNER DRAW * | | | | |
| TRANSFERS *(TO DIP ACCTS)* | | | | |
| PROFESSIONAL FEES | | | | |
| U.S. TRUSTEE QUARTERLY FEES | | | | |
| COURT COSTS | | | | |
| **TOTAL DISBURSEMENTS** | $      4,574.54 | | | $      4,574.54 |
| **NET CASH FLOW (RECEIPTS LESS DISBURSEMENTS)** | $      1,425.46 | | | $      1,425.46 |
| **CASH - END OF MONTH** | $      2,300.46 | | | $      2,300.46 |

* COMPENSATION TO SOLE PROPRIETORS FOR SERVICES RENDERED TO BANKRUPTCY ESTATE

### THE FOLLOWING SECTION MUST BE COMPLETED
DISBURSEMENTS FOR CALCULATING U.S. TRUSTEE QUARTERLY FEES: (FROM CURRENT MONTH ACTUAL COLUMN)

| | |
|---|---|
| **TOTAL DISBURSEMENTS** | $        4,574.54 |
|    LESS: TRANSFERS TO OTHER DEBTOR IN POSSESSION ACCOUNTS | |
|    PLUS: ESTATE DISBURSEMENTS MADE BY OUTSIDE SOURCES (i.e. from escrow accounts) | |
| **TOTAL DISBURSEMENTS FOR CALCULATING U.S. TRUSTEE QUARTERLY FEES** | |

OTHER RECEIPTS

| | | |
|---|---|---|
| RENTAL INCOME | $        6,000.00 | |
| | | |

OTHER DISBURSEMENTS

| | | |
|---|---|---|
| MORTGAGE PAYMENT | $        4,574.54 | |
| | | |

In re _____          Case No. _____
**Debtor**                                Reporting Period: _____

# BANK RECONCILIATIONS

**Continuation Sheet for MOR-1**

A bank reconciliation must be included for each bank account.  The debtor's bank reconciliation may be substituted
for this page.

(Bank account numbers may be redacted to last four numbers.)

|  | Operating | Tax | Other |
|---|---|---|---|
|  | # | # | # |
| **BALANCE PER BOOKS** | | | |
|  | | | |
| BANK BALANCE | $        2,300.46 | | |
| (+) DEPOSITS IN TRANSIT *(ATTACH LIST)* | | | |
| (-) OUTSTANDING CHECKS *(ATTACH LIST)* : | | | |
| OTHER  *(ATTACH EXPLANATION)* | | | |
|  | | | |
| **ADJUSTED BANK BALANCE \*** | $        2,300.46 | | |

\*"Adjusted Bank Balance" must equal "Balance per Books"

| DEPOSITS IN TRANSIT | Date | Date | Amount |
|---|---|---|---|
|  | | | |
|  | | | |
|  | | | |
|  | | | |
| CHECKS OUTSTANDING | Ck. # | Ck. # | Amount |
|  | | | |
|  | | | |
|  | | | |
|  | | | |
|  | | | |
|  | | | |
|  | | | |
|  | | | |
|  | | | |
|  | | | |
|  | | | |

**OTHER**

_____
_____
_____
_____
_____

In re _____                    Case No. _____
      **Debtor**                                    Reporting Period: _____

### STATEMENT OF OPERATIONS  (Income Statement)

The Statement of Operations is to be prepared on an accrual basis.  The accrual basis of accounting recognizes revenue
when it is realized and expenses when they are incurred, regardless of when cash is actually received or paid.

| INCOME | MONTH | CUMULATIVE -FILING TO DATE |
|---|---|---|
| Rental Income | $          6,000.00 | |
| Additional Rental Income | | |
| Common Area Maintenance Reimbursement | | |
| Total Income *(attach MOR-5 (RE) Rent Roll)* | $          6,000.00 | |
| **OPERATING EXPENSES** | | |
| Advertising | | |
| Auto and Truck Expense | | |
| Cleaning and Maintenance | | |
| Commissions | | |
| Officer/Insider Compensation* | | |
| Insurance | | |
| Management Fees/Bonuses | | |
| Office Expense | | |
| Other Interest | | |
| Repairs | | |
| Supplies | | |
| Taxes - Real Estate | | |
| Travel and Entertainment | | |
| Utilities | | |
| Other *(attach schedule)* | $          4,574.54 | |
| Total Operating Expenses Before Depreciation | $          4,574.54 | |
| Depreciation/Depletion/Amortization | | |
| Net Profit (Loss) Before Other Income & Expenses | $          1,425.46 | |
| **OTHER INCOME AND EXPENSES** | | |
| Other Income *(attach schedule)* | | |
| Interest Expense | | |
| Other Expense *(attach schedule)* | | |
| Net Profit (Loss) Before Reorganization Items | | |
| **REORGANIZATION ITEMS** | | |
| Professional Fees | | |
| U. S. Trustee Quarterly Fees | | |
| Interest Earned on Accumulated Cash from Chapter 11 *(see continuation sheet)* | | |
| Gain (Loss) from Sale of Property | | |
| Other Reorganization Expenses *(attach schedule)* | | |
| Total Reorganization Expenses | | |
| Income Taxes | | |
| Net Profit (Loss) | $          1,425.46 | |

*"Insider" is defined in 11 U.S.C. Section 101(31).

In re _____     Case No. _____

     **Debtor**                                    **Reporting Period:** _____

## BREAKDOWN OF "OTHER" CATEGORY

OTHER OPERATIONAL EXPENSES

| | | |
|---|---|---|
| Mortgage | $ 4,574.54 | |
| | | |
| | | |
| | | |

OTHER INCOME

| | | |
|---|---|---|
| | | |
| | | |
| | | |

OTHER EXPENSES

| | | |
|---|---|---|
| | | |
| | | |
| | | |

OTHER REORGANIZATION EXPENSES

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**Reorganization Items - Interest Earned on Accumulated Cash from Chapter 11:**
Interest earned on cash accumulated during the chapter 11 case, which would not have been earned but for the bankruptcy proceeding, should be reported as a reorganization item.

In re _____    Case No. _____
      **Debtor**                   Reporting Period: _____

## BALANCE SHEET

The Balance Sheet is to be completed on an accrual basis only. Pre-petition liabilities must be classified separately from post-petition obligations.

| ASSETS | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE AT END OF PRIOR REPORTING MONTH | BOOK VALUE ON PETITION DATE OR SCHEDULED |
|---|---|---|---|
| **CURRENT ASSETS** | | | |
| Unrestricted Cash and Equivalents | $    2,300.46 | | |
| Restricted Cash and Cash Equivalents *(see continuation sheet)* | | | |
| Accounts Receivable (Net) | | | |
| Notes Receivable | | | |
| Prepaid Expenses | | | |
| Professional Retainers | | | |
| Other Current Assets *(attach schedule)* | | | |
| *TOTAL CURRENT ASSETS* | $    2,300.46 | | |
| **PROPERTY & EQUIPMENT** | | | |
| Real Property and Improvements | $    950,000.00 | | $    950,000.00 |
| Machinery and Equipment | | | |
| Furniture, Fixtures and Office Equipment | $    40,000.00 | | $    40,000.00 |
| Leasehold Improvements | | | |
| Vehicles | | | |
| Less:  Accumulated Depreciation | | | |
| *TOTAL PROPERTY & EQUIPMENT* | $    990,000.00 | | $    990,000.00 |
| **OTHER ASSETS** | | | |
| Amounts due from Insiders* | | | |
| Other Assets *(attach schedule)* | | | |
| *TOTAL OTHER ASSETS* | | | |
| *TOTAL ASSETS* | $    992,300.46 | | |

| LIABILITIES AND OWNER EQUITY | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE AT END OF PRIOR REPORTING MONTH | BOOK VALUE ON PETITION DATE |
|---|---|---|---|
| **LIABILITIES NOT SUBJECT TO COMPROMISE (Postpetition)** | | | |
| Accounts Payable | | | |
| Taxes Payable *(refer to FORM MOR-4)* | | | |
| Notes Payable | | | |
| Rent / Leases - Building/Equipment | | | |
| Secured Debt / Adequate Protection Payments | | | |
| Professional Fees | | | |
| Amounts Due to Insiders* | | | |
| Other Post-petition Liabilities *(attach schedule)* | | | |
| *TOTAL POST-PETITION LIABILITIES* | | | |
| **LIABILITIES SUBJECT TO COMPROMISE (Pre-Petition)** | | | |
| Secured Debt | $    698,000.00 | | $    698,000.00 |
| Priority Debt | $    17,128.42 | | $    17,128.42 |
| Unsecured Debt | $    122,500.00 | | $    122,500.00 |
| *TOTAL PRE-PETITION LIABILITIES* | | | |
| *TOTAL LIABILITIES* | $    837,628.42 | | $    837,628.42 |
| **OWNERS' EQUITY** | | | |
| Owner's Equity Account | | | |
| Retained Earnings - Pre-Petition | | | |
| Retained Earnings - Post-petition | | | |
| Adjustments to Owner Equity *(attach schedule)* | | | |
| Post-petition Contributions *(attach schedule)* | | | |
| *NET OWNERS' EQUITY* | | | |
| **TOTAL LIABILITIES AND OWNERS' EQUITY** | | | |

*"Insider" is defined in 11 U.S.C. Section 101(31).

In re _____     Case No. _____
    **Debtor**                                    **Reporting Period:** _____

**BALANCE SHEET - continuation section**

| ASSETS | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE AT END OF PRIOR REPORTING MONTH | BOOK VALUE ON PETITION DATE |
|---|---|---|---|
| Other Current Assets | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Other Assets | | | |
| | | | |
| | | | |
| | | | |

| LIABILITIES AND OWNER EQUITY | BOOK VALUE AT END OF CURRENT REPORTING MONTH | | BOOK VALUE ON PETITION DATE |
|---|---|---|---|
| Other Post-petition Liabilities | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Adjustments to Owner's Equity | | | |
| | | | |
| | | | |
| Post-Petition Contributions | | | |
| | | | |
| | | | |
| | | | |

Restricted Cash:  Cash that is restricted for a specific use and not available to fund operations.
Typically, restricted cash is segregated into a separate account, such as an escrow account.

In re _____
         **Debtor**

Case No. _____
Reporting Period: _____

## SUMMARY OF UNPAID POST-PETITION DEBTS

|  | Number of Days Past Due | | | | |
|---|---|---|---|---|---|
|  | Current | 0-30 | 31-60 | 61-90 | Over 91 | Total |
| Mortgage |  |  |  |  |  |  |
| Rent |  |  |  |  |  |  |
| Secured Debt/Adequate Protection Payments |  |  |  |  |  |  |
| Professional Fees |  |  |  |  |  |  |
| Real Estate Taxes |  |  |  |  |  |  |
| Other Post-Petition debt *(list creditor)* |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
| **Total Post-petition Debts** |  |  |  |  |  |  |

Explain how and when the Debtor intends to pay any past due post-petition debts.

_____
_____
_____

In re _____
    **Debtor**

Case No. _____
Reporting Period: _____

# RENT ROLL

A rent roll must be included for each property. The debtor's rent roll may be substituted for this page. Attach additional sheets as needed.

Property: _____
Square Footage: _____

| Tenant | Unit # | Office Area | Warehouse Area | Total Sq. Ft. | % of Bldg. | Lease Type | Lease Term | Lease Start | Lease End | Monthly Rent | Annual Rent | Common Area Maint. |
|--------|--------|-------------|----------------|---------------|------------|------------|------------|-------------|-----------|--------------|-------------|--------------------|
|  | Building |  |  |  | 100 | Triple Net | 10yrs | 6/10/2010 | 6/9/2020 | $ 6,000.00 | $ 72,000.00 |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  | Totals |  | $ 6,000.00 | $ 72,000.00 |  |

In re _____    Case No. _____
    Debtor                         Reporting Period: _____

# PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown on the Cash Receipts and Disbursements Report (MOR-1) list the amount paid to insiders (as defined in Section 101(31) (A)-(F) of the U.S. Bankruptcy Code) and to professionals. For payments to insiders, identify the type of compensation paid (e.g. Salary, Bonus, Commissions, Insurance, Housing Allowance, Travel, Car Allowance, Etc.). Attach additional sheets if necessary.

| INSIDERS | | | |
|---|---|---|---|
| NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID TO DATE |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL PAYMENTS TO INSIDERS | | | |

| PROFESSIONALS | | | | | |
|---|---|---|---|---|---|
| NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID* |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| TOTAL PAYMENTS TO PROFESSIONALS | | | | | |

* INCLUDE ALL FEES INCURRED, BOTH APPROVED AND UNAPPROVED

## POST-PETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS

| NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENT DUE | AMOUNT PAID DURING MONTH | TOTAL UNPAID POST-PETITION |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL PAYMENTS | | | |

**In re** _____  **Case No.** _____

**Debtor**  **Reporting Period:** _____

## CASH FLOW PROJECTION FOR THE PERIOD _____ THROUGH _____

A cash flow projection must be included for each property. The debtor's cash flow projection may be substituted for this page. Attach additional sheets as needed. This projection needs to be completed at the beginning of the case, every year, or when there are significant changes (i.e. tenant change, rent change, etc.)

**Property:** _____

**Square Footage:** _____

| | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | |
| Rental Income | | | | | | | | | | | | |
| Additional Rental Income | | | | | | | | | | | | |
| Common Area Maintenance Reimbursement | | | | | | | | | | | | |
| Total Income | | | | | | | | | | | | |
| **OPERATING EXPENSES** | | | | | | | | | | | | |
| Advertising | | | | | | | | | | | | |
| Auto and Truck Expense | | | | | | | | | | | | |
| Cleaning and Maintenance | | | | | | | | | | | | |
| Commissions | | | | | | | | | | | | |
| Officer/Insider Compensation* | | | | | | | | | | | | |
| Insurance | | | | | | | | | | | | |
| Management Fees/Bonuses | | | | | | | | | | | | |
| Office Expense | | | | | | | | | | | | |
| Other Interest | | | | | | | | | | | | |
| Repairs | | | | | | | | | | | | |
| Supplies | | | | | | | | | | | | |
| Taxes - Real Estate | | | | | | | | | | | | |
| Travel and Entertainment | | | | | | | | | | | | |
| Utilities | | | | | | | | | | | | |
| Other *(attach schedule)* | | | | | | | | | | | | |
| Total Expenses | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Debt Service | | | | | | | | | | | | |
| Professional Fees | | | | | | | | | | | | |
| U.S. Trustee Fees | | | | | | | | | | | | |
| Court Costs | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Net Income | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Tenant Improvements | | | | | | | | | | | | |
| Vacancy Allowance | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Net Cash Flow | | | | | | | | | | | | |

In re _____    Case No. _____
          **Debtor**                        Reporting Period: _____

## DEBTOR QUESTIONNAIRE

| | Must be completed each month.  If the answer to any of the questions is "Yes", provide a detailed explanation of each item. Attach additional sheets if necessary. | Yes | No |
|---|---|---|---|
| 1 | Have any assets been sold or transferred outside the normal course of business this reporting period? | | X |
| 2 | Have any funds been disbursed from any account other than a debtor in possession account this reporting period? | | X |
| 3 | Is the Debtor delinquent in the timely filing of any post-petition tax returns? | | X |
| 4 | Are workers compensation, general liability or other necessary insurance coverages expired or cancelled, or has the debtor received notice of expiration or cancellation of such policies? | | X |
| 5 | Is the Debtor delinquent in paying any insurance premium payment? | | X |
| 6 | Have any payments been made on pre-petition liabilities this reporting period? | | **X** |
| 7 | Are any post petition receivables (accounts, notes or loans) due from related parties? | | X |
| 8 | Are any post petition State or Federal income taxes past due? | | X |
| 9 | Are any post petition real estate taxes past due? | | X |
| 10 | Are any other post petition taxes past due? | | **X** |
| 11 | Have any pre-petition taxes been paid during this reporting period? | | X |
| 12 | Are any amounts owed to post petition creditors delinquent? | | X |
| 13 | Have any post petition loans been been received by the Debtor from any party? | | X |
| 14 | Is the Debtor delinquent in paying any U.S. Trustee fees? | | X |
| 15 | Is the Debtor delinquent with any court ordered payments to attorneys or other professionals? | | X |
| 16 | Have the owners or shareholders received any compensation outside of the normal course of business? | | X |

# *PRE-BILL*

## Backenroth Frankel Krinsky

| | | | | |
|---|---|---|---|---|
| **Client:** | BREAA004SS | | | |
| **Matter:** | 909 | Family T, LLC | **Originating Timekeeper:** | AJB |
| **Matter Type:** | | | **Responsible Timekeeper:** | AJB |
| **Comments :** | | | **Billing Format Code:** | GEN |
| **File Open Date:** | 07/19/2010 | | **Fees/Costs Cut Date:** | 09/22/2010 |
| **Billing Mode:** | Hourly | **Bill Date:** 09/22/2010 | **Payments Cut Date:** | 09/22/2010 |
| | | **Start Date:** 01/01/1900 | | |
| **Billing Frequency :** | Monthly | **Last Bill:** | | |
| **Remarks:** | | | **Type of Bill:** | Regular |

| ACCOUNT AGING | Current | 30 - 59 Days | 60 - 89 Days | 90 Days and Over |
|---|---|---|---|---|
| | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

| **Fees Billed to Date:** | $0.00 | **Costs Billed to Date:** | $0.00 |
|---|---|---|---|

## Fees

| Ticket Number | Date | Timekeeper | Description | Hours | Amount | |
|---|---|---|---|---|---|---|
| 4 | 07/06/2010 | MAF | Completed petition (3.8); o/c AJB re Ch. 11 strategy (.5) | 4.30 | $2,085.50 | BL |
| 3 | 07/12/2010 | AJB | Meeting with client to discuss plan issues | 2.90 | $1,522.50 | BL |
| 2 | 07/13/2010 | AJB | Meeting with client re petition & Ch. 11 strategy | 1.40 | $735.00 | BL |
| 1 | 07/14/2010 | AJB | Review petition; conf call with client | 1.20 | $630.00 | BL |
| 5 | 07/15/2010 | MAF | Revised petition and drafted local rule aff't and retention application | 3.00 | $1,455.00 | BL |
| 6 | 07/21/2010 | MAF | Teleconference Alan Bresler re petition prep | 0.10 | $48.50 | BL |
| 7 | 07/27/2010 | AJB | Review email re petition & plan | 0.30 | $157.50 | BL |
| 8 | 07/30/2010 | MAF | Drafting plan and disclosure statement | 2.80 | $1,358.00 | BL |
| 9 | 08/04/2010 | MAF | Draafted bar date aplication (.8); t/c's client re OSC on small business documents (.5); reviewed same and researched small business documents (1.5) | 2.80 | $1,358.00 | BL |
| 10 | 08/04/2010 | AJB | Conf call with client; conf call with MF re OSC | 0.90 | $472.50 | BL |
| 11 | 08/05/2010 | MAF | Teleconference client re 08 and o9 tax returns and plan prep (.3); drafting disclosure statement (.5); revised schedules and filed same (.5) | 1.30 | $630.50 | BL |
| 12 | 08/09/2010 | MAF | Teleconference court re 8/9 OSC (.1); telephone hearing re fileing (.1); prepare same (.4) | 0.60 | $291.00 | BL |
| 13 | 08/11/2010 | MAF | Teleconference Bresler re 341 meeting and IDI | 0.20 | $97.00 | BL |
| 14 | 08/16/2010 | MAF | Teleconference Bressler re bank debt | 0.30 | $145.50 | BL |
| 15 | 08/17/2010 | MAF | Prep for 8/18 IDI (.6); t/c's client re same (.4) | 1.00 | $485.00 | BL |
| 16 | 08/18/2010 | MAF | To IDI | 2.00 | $970.00 | BL |
| 17 | 08/24/2010 | MAF | Teleconference IRS re tax returns | 0.10 | $48.50 | BL |

**Continued On Next Page**

# *PRE-BILL*

## Backenroth Frankel Krinsky

Client: BREAA004SS     Alan Bresler
Matter: 909     Family T, LLC

| | | | | | | |
|---|---|---|---|---|---|---|
| 18 | 08/26/2010 | MAF | Teleconference Martin re adj (.1); drafted notice re same (.1); emails re same (.1); t/c client re same (s.1) | 0.40 | $194.00 | BL |
| 19 | 08/31/2010 | MAF | Drafting pan and disclosure statement (3.0); t/c client re projections (.2) | 3.20 | $1,552.00 | BL |
| 20 | 09/07/2010 | MAF | Revised plan and disclosure statement (1.5); status conf re projections, op reports, 391 and status conf (.4) | 1.90 | $921.50 | BL |
| 21 | 09/08/2010 | MAF | O/C AJB re plan and disclosure (.5); t/c client re same (.3); filed bar date application (.1) | 0.90 | $436.50 | BL |
| 22 | 09/13/2010 | MAF | To 341 meeting (2.3); sent bar date order to court (.1) | 2.40 | $1,164.00 | BL |
| 23 | 09/14/2010 | MAF | To court on status conf | 2.00 | $970.00 | BL |
| 24 | 09/15/2010 | MAF | Completed and served bar date notice | 0.50 | $242.50 | BL |
| 25 | 09/17/2010 | MAF | Sent retention documents to UST | 0.10 | $48.50 | BL |
| 26 | 09/20/2010 | MAF | Reviewed op report and projections | 0.50 | $242.50 | BL |
| 27 | 09/21/2010 | MAF | Revised plan disclosure statement | 1.20 | $582.00 | BL |

|  | | |
|---|---|---|
| **Total Hours:** | 38.30 | |
| **Billable Hours:** | 38.30 | $18,843.50 |

### Timekeeper Summary

Timekeeper AJB worked 6.70 hours at $525.00 per hour, totaling $3,517.50.
Timekeeper MAF worked 31.60 hours at $485.00 per hour, totaling $15,326.00.

## Costs

| **Date** | **Description** | **Amount** | **Check No.** |
|---|---|---|---|
| 08/19/2010 | Filing Fee 7/27/10 | $1,039.00 | 10565 |
| | **Payee:** American Express | | |
| | **Total Costs:** | **$1,039.00** | |

**Continued On Next Page**

# *PRE-BILL*

## Backenroth Frankel Krinsky

Client:  BREAA004SS          Alan Bresler
Matter:  909                 Family T, LLC

| | |
|---|---:|
| **Prior Balance:** | $0.00 |
| **Payments Received:** | $0.00 |
| **Current Fees:** | $18,843.50 |
| **Sales Tax on Fees:** | $0.00 |
| **Advanced Costs:** | $1,039.00 |
| **Sales Tax on Costs:** | $0.00 |
| **Administrative Cost:** | $0.00 |
| **Late Charges:** | $0.00 |
| **Additional Retainer Due:** | $0.00 |
| **TOTAL AMOUNT DUE:** | **$19,882.50** |

**Continued On Next Page**

Exhibit D

**EXHIBIT D**

**CHAPTER 7 LIQUIDATION ANALYSIS**

Assets
Real Property..................................................................................... $ 950,000

Distribution
NYC Tax Water and Sewer........................................................... $     17,128
First Mortgage ............................................................................ $   695,174
Administration Claims.................................................................. $   200,000
General Unsecured Claims............................................................ $     34,400
Interest Holders............................................................................ $       3,298

Total                                                                                                  $   950,000


NOTE: The amounts set forth herein do not constitute an admission of liability, and such amounts are included for the purpose of disclosing certain claims asserted in this case, and the value of the property as ascribed by the Debtor.

Exhibit E

## EXHIBIT E

## Effective Date Distributions

<u>Funds</u>
| | | |
|---|---|---|
| Joseph Treff Loan Funds held by Debtor's Counsel | $ | 70,000 |
| Joseph Treff Loan Funds to be deposited with Debtor's Counsel | $ | 11,279 |
| Pre-Petition Debtor Funds held by Debtor's Counsel | $ | 4,961 |
| Total | $ | 86,240 |

<u>Distribution</u>
| | | |
|---|---|---|
| NYC Tax Water and Sewer | $ | 17,128 |
| First Mortgage | $ | 54,894 |
| First Mortgage Late Fees | $ | 5,032 |
| First Mortgage Legal Fees | $ | 6,323 |
| United States Trustee Feees | $ | 650 |
| Priority Tax Claims (to be reserved) | $ | 2,213 |
| Total | $ | 86,240 |

Exhibit F

| Creditors | Balance | Payment Schedule | Monthly Payments | Yearly Payments |
|---|---|---|---|---|
| Joseph Treff Loan | $ 81,279.00 | 3 year interest only | $ 379.30 | $ 4,551.62 |
| Altz Group | $ 21,650.00 | Equal monthly payments over 3 years | $ 605.01 | $ 7,260.12 |
| Boaz Contractor | $ 8,250.00 | Equal monthly payments over 3 years | $ 230.54 | $ 2,766.48 |
| BV&G Mechanical | $ 4,500.00 | Equal monthly payments over 3 years | $ 125.76 | $ 1,509.12 |

**Year One**

| | | Creditor Balance | Monthly | | Yearly | |
|---|---|---|---|---|---|---|
| Income | Rent | | $ | 6,000.00 | $ | 72,000.00 |
| Expense | Mortgage | | $ | 4,574.54 | $ | 54,894.48 |
| Expense | Loan | $ 81,279.00 | $ | 379.30 | $ | 4,551.62 |
| Expense | Altz Group | $ 21,714.95 | $ | 605.01 | $ | 7,260.12 |
| Expense | Boaz Contractor | $ 8,274.75 | $ | 230.55 | $ | 2,766.60 |
| Expense | BV&G Mechanical | $ 4,513.50 | $ | 125.75 | $ | 1,509.00 |
| **Profit** | | | **$** | **84.85** | **$** | **1,018.18** |

**Year Two**

| | | Creditor Balance | Monthly | | Yearly | |
|---|---|---|---|---|---|---|
| Income | Rent | | $ | 6,000.00 | $ | 72,000.00 |
| Expense | Mortgage | | $ | 4,574.54 | $ | 54,894.48 |
| Expense | Loan | $ 81,279.00 | $ | 379.30 | $ | 4,551.62 |
| Expense | Altz Group | $ 14,498.19 | $ | 605.01 | $ | 7,260.12 |
| Expense | Boaz Contractor | $ 5,524.67 | $ | 230.54 | $ | 2,766.48 |
| Expense | BV&G Mechanical | $ 3,013.51 | $ | 125.76 | $ | 1,509.12 |
| **Profit** | | | **$** | **84.85** | **$** | **1,018.18** |

**Year Three**

| | | Creditor Balance | Monthly | | Yearly | |
|---|---|---|---|---|---|---|
| Income | Rent | | $ | 6,000.00 | $ | 72,000.00 |
| Expense | Mortgage | | $ | 4,574.54 | $ | 54,894.48 |
| Expense | Loan | $ 81,279.00 | $ | 379.30 | $ | 4,551.62 |
| Expense | Altz Group | $ 7,259.79 | $ | 605.01 | $ | 7,260.12 |
| Expense | Boaz Contractor | $ 2,766.47 | $ | 230.54 | $ | 2,766.48 |
| Expense | BV&G Mechanical | $ 1,508.91 | $ | 125.76 | $ | 1,509.12 |
| **Profit** | | | **$** | **84.85** | **$** | **1,018.18** |